**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 12 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

HUMBERTO FERNANDEZ-
VARGAS,

        Petitioner,

v.

JOHN ASHCROFT, Attorney General,

        Respondent. *

No. 03-9610

---

### PETITION FOR REVIEW OF AN ORDER OF THE
### BOARD OF IMMIGRATION APPEALS
### (BIA No. A-34-693-404)

---

Submitted on the briefs:

J. Chris Keen, Keen Law Offices, LLC, Provo, Utah, for Petitioner.

Papu Sandhu, Senior Litigation Counsel, Aviva L. Poczter, Attorney, United States Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C., for Respondent.

---

Before **McCONNELL** , **HOLLOWAY** , and **PORFILIO** , Circuit Judges.

---

\*     The government correctly points out in its brief that the Attorney General is the only proper respondent in this case under 8 U.S.C. § 1252(b)(3)(a), and moves that the caption be amended to remove Tom Ridge, the Department of Homeland Security, and the Bureau of Immigration and Customs Enforcement, as parties. The government's motion is granted.

**McCONNELL** , Circuit Judge.

This case turns upon the application of two statutes.[1]  The first statute is § 245(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1255(i), which allows an alien who entered the United States without inspection to apply to become an alien lawfully admitted for permanent residence, if a petition for classification under INA § 204, 8 U.S.C. § 1154, (including a relative visa petition) was filed on his or her behalf before April 30, 2001.        [2]

The second statute is INA § 241(a)(5), 8 U.S.C. § 1231(a)(5) (referred to at times throughout as the "reinstatement statute"), which both (1) provides that a prior order of removal may be reinstated against an alien who has illegally re-entered the United States, and (2) bars that alien from applying for any form of "relief" under Chapter 12 of U.S.C. Title 8.      [3]  INA § 241(a)(5) replaced the former

---

[1]      After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

[2]      We shall refer to the relevant statutory sections by both their INA and U.S.C. section numbers in the first instance and, thereafter, only by the INA section numbers.

[3]      INA § 241(a)(5) was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, 110 Stat. 3009-546

(continued...)

reinstatement provision, INA § 242(f), 8 U.S.C. § 1252(f) (repealed 1996), which, among other differences, did not prohibit application for relief.

The parties ask us to decide two questions regarding these statutes: (1) Is Petitioner Humberto Fernandez-Vargas' ("Fernandez") application to adjust status under INA § 245(i) an application for "relief" barred by the reinstatement statute? (2) If so, is this bar impermissibly retroactive when applied to Fernandez, a previously deported immigrant who re-entered the country prior to the reinstatement statute's April 1, 1997, effective date?

Because the plain language of the reinstatement statute bars application for any form of relief under Chapter 12 of U.S.C. Title 8, we hold that the reinstatement statute bars Fernandez' application to adjust status under INA § 245(i), 8 U.S.C. § 1255(i). Further, since both the filing of Fernandez' application to adjust status, and the marriage upon which his application is based, occurred *after* the effective date of the reinstatement statute, there is no impermissible retroactive effect. Therefore, Fernandez' petition for review is denied.

---

[3](...continued)
(IIRIRA), effective April 1, 1997. *See* IIRIRA § 309(a); *Arevalo v. Ashcroft*, 344 F.3d 1, 5 (1st Cir. 2003).

## I. BACKGROUND

Fernandez, a native and citizen of Mexico, has been deported from the United States on several occasions. Shortly after his last deportation in October of 1981, Fernandez re-entered the United States without inspection and has lived in this country ever since. On March 30, 2001, nearly four years after the April 1, 1997, effective date of the reinstatement statute, Fernandez married Rita Fernandez, a United States citizen and, on May 30, 2001, he filed both a Form I-212 Application for Permission to Reapply for Admission Into the United States After Deportation or Removal ("Form I-212"), and an application to adjust his status to that of a legal permanent resident. [4]

Thereafter, apparently at an interview regarding his application, Fernandez was arrested for being in the country illegally. The government reinstated the 1981 order of deportation and, on November 17, 2003, issued a warrant commanding that Fernandez be taken into custody and removed from the United States. Fernandez then filed his petition with this court, arguing his prior order of

---

[4] Fernandez also claims that his wife filed a relative visa petition for him at some point and that he was provided employment authorization due to his pending adjustment application, although there is nothing in the record to support these assertions. It does appear, however, that the government treated Fernandez' adjustment application as if a relative visa petition had been filed on his behalf prior to April 30, 2001, and the government does not dispute in its brief that such a petition was filed.

deportation could not be reinstated without a decision being made on his "pending" adjustment application.

In its brief, the United States claims that reinstatement of Fernandez' deportation order was proper in that Fernandez was barred from applying for adjustment of his immigration status. The government also claims that a decision *was* made on Fernandez' application and the administrative record does contain an unsigned and undated letter from U.S. Citizenship and Immigration Services ("USCIS"), a bureau of the Department of Homeland Security, purportedly denying Fernandez' application. One of the grounds for denial presented by the government in its letter was that INA § 241(a)(5) prohibited Fernandez from applying for or receiving relief. The letter also presented two other grounds for denying adjustment: (1) that Fernandez had sought admission to the United States by fraud or willful misrepresentation under INA § 212(a)(6)(C), 8 U.S.C. § 1182(a)(6)(C), and (2) that Fernandez was ineligible for admission under INA § 212(a)(9)(A)(i), 8 U.S.C. § 1182(a)(9)(A)(i), because he had been previously deported and twenty years had not passed since his last removal. In his brief, Fernandez questions whether this unsigned and undated denial letter was ever sent and claims he did not learn of the letter's existence until the production of the administrative record for review.

## II. DISCUSSION

Fernandez seeks review of the government's reinstatement of his deportation order, arguing (1) that the bar to relief found in INA § 241(a)(5) does not prohibit his application for adjustment of status under INA § 245(i), and (2) that if INA § 241(a)(5) *does* bar his application, the effect of the bar on him is impermissibly retroactive. As for the letter denying his application, Fernandez claims his inadmissibility under INA § 212(a)(6)(C) could have been waived because denial of adjustment will cause his spouse extreme hardship, but that he was prevented from applying for such a waiver by the reinstatement of the prior deportation order. He also claims that his inadmissibility under INA § 212(a)(9)(A)(i) would have been waived if his Form I-212–which was not addressed in the denial–had been granted. He argues that the reinstatement order should be reversed and, essentially, that he should have the opportunity to have his application for adjustment ruled upon once he has had a chance to properly request waivers of the other possible grounds for denial. Even if, for the sake of argument, we assume Fernandez qualified for waivers of the grounds for denial found in INA § 212(a)(6)(C) and INA § 212(a)(9)(A)(i), and that he was prevented from properly applying for and receiving these waivers by the reinstatement of his prior order of deportation, we must still deny his petition because we hold that the reinstatement statute barred Fernandez' application to

-6-

adjust his immigration status, and that the bar is not an impermissible retroactive effect on Fernandez.

A. Jurisdiction and Standard of Review

An order reinstating a prior removal order is the functional equivalent of a final order of removal and, therefore, we have jurisdiction to review the reinstatement order under INA § 242(b)(2), 8 U.S.C. § 1252(b)(2). *Garcia-Marrufo v. Ashcroft*, 376 F.3d 1061, 1063 (10th Cir. 2004); *Arevalo*, 344 F.3d at 2. Although we defer to an agency's interpretation of a statute when the statute is ambiguous, here there is no ambiguity and we are instead faced with purely legal questions, which we review de novo. *Lattab v. Ashcroft*, 384 F.3d 8, 14 (1st Cir. 2004); *Arevalo*, 344 F.3d at 9-10.

B. INA § 241(a)(5)'s Bar To Application For Relief

Fernandez' argument is that his INA § 245(i) application to adjust status was not barred by INA § 241(a)(5)'s bar to application and eligibility for "any relief." INA § 241(a)(5) reads:

> If the Attorney General finds that an alien has *reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal,* the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, *the alien is not eligible and may not apply for any relief under this chapter*, and the alien shall be removed under the prior order at any time after the reentry.

INA § 241(a)(5) (emphasis added). INA § 245(i) provides that the Attorney General may adjust the status of an alien physically present in the United States who entered without inspection if the alien meets certain requirements, including being "admissible to the United States for permanent residence."

Generally, a previously removed alien who illegally re-enters the United States is permanently inadmissible to the United States under INA § 212(a)(9)(C)(i)(II), and therefore not eligible for adjustment of status under INA § 245(i). *See Berrum-Garcia,* 2004 WL 2668797 at *6-*7 ("It is therefore apparent to us that Congress did not consider those who reenter the United States in defiance of a prior deportation order to be qualified for [INA § 245(i)'s] amnesty."). While a waiver of this permanent inadmissibility is available, that waiver may only be sought following the completion of an unwaivable ten-year period outside of the United States. INA § 212(a)(9)(C)(ii) *; Berrum-Garcia*, 2004 WL 2668797 at *6. Consequently, we find no *inherent* tension between the allowance of adjustment of status to aliens admitted without inspection under INA § 245(i) and the bar to any relief to previously removed aliens who illegally re-enter the United States under INA § 241(a)(5).

Fernandez cites *Prado Hernandez v. Reno*, 86 F. Supp. 2d 1037 (W.D. Wash. 1999), to support his argument that he should be allowed to adjust his status despite his previous removal order and subsequent illegal reentry. In *Prado*

*Hernandez* , the district court held that an application to adjust status under INA § 245(i), submitted before reinstatement of the alien's previous deportation order, was not a "request for relief" barred by INA § 241(a)(5), and that the alien was entitled to have his adjustment application considered before the previous deportation order was reinstated. [5] *Id*. at 1041-42. The district court held that the adjustment application could not be considered a request for relief because, at the time it was filed, the INS had not yet moved to reinstate the prior deportation order and so there was no action from which to seek relief. *Id*. at 1041. The district court also treated the reinstatement as a new deportation, *id*. ("Prado-Herandez applied for adjustment of status before any deportation proceedings had commenced."), and held that the fact that the alien might be deportable under the reinstatement statute did not make him ineligible for adjustment of status. *Id*. at 1041-42.

Here, like the alien in *Prado Hernandez* , Fernandez submitted his adjustment application prior to reinstatement. We are not persuaded by the decision in *Prado Hernandez* and decline to follow it in that the district court apparently ignored the fact that the alien was not deportable but *deported* and was

---

[5] In *Prado-Hernandez* , the previously removed alien submitted a Form I-212 along with his adjustment of status application. The government granted the Form I-212 despite the fact that the alien had illegally re-entered the United States. *Id*. at 1038, 1041 n.3.

ineligible for relief from that prior deportation under the reinstatement statute.

As this court has recently stated: "Petitioner's argument that [INA § 241(a)(5)]

poses no bar to his efforts to obtain . . . adjustment of status is refuted by the

plain language of the statute." *Berrum-Garcia*, 2004 WL 2668797 at *3. As

recognized by the First Circuit in *Lattab*, the plain language of the statute bars

"any relief," including adjustment of status under INA § 245(i):

> [the argument that INA § 241(a)(5)'s bar to relief does not apply to applications for adjustment filed before reinstatement of the order of deportation is] squarely foreclosed by the text of the statute. Section 241(a)(5) subjects an illegal reentrant to three independent consequences: reinstatement of the prior deportation order, ineligibility for any relief, and removal. Grammatically, section 241(a)(5) does not make ineligibility for relief dependent upon reinstatement of the prior deportation order. And even if it did, section 241(a)(5) expressly makes reinstatement retroactive to the date of the original deportation order.

*Lattab*, 384 F.3d at 16; *see also Flores v. Ashcroft*, 354 F.3d 727, 730-31 (8th Cir.

2003) (holding that INA § 241(a)(5) bars adjustment of status under INA

§ 245(i)); *Alvarez-Portillo v. Ashcroft*, 280 F.3d 858, 862 (8th Cir. 2002) (finding

the argument that INA § 245(i) "conflicts with and supersedes" INA § 241(a)(5)

to be without merit and rejecting it without discussion). The fact that Fernandez

filed his application for adjustment of status prior to the reinstatement of his prior

removal order does not help him.

> [INA § 241(a)(5)] states not only that an illegal reentrant "may not apply" for relief, but also that he is "not eligible" for relief. Once

Petitioner's prior removal order has been reinstated, he no longer qualifies for any relief under the INA, regardless of whether his applications for relief were filed before or after the reinstatement decision is made. The timing of Petitioner's applications is simply immaterial.

*Berrum-Garcia*, 2004 WL 2668797 at *4.

Further, Fernandez relied on INA § 245(i), as revised by the Legal Immigration Family Equity Act and the LIFE Act Amendments of 2000, in applying to adjust his status. [6] Congress' understanding that the reinstatement statute barred adjustment of status is clear from the Life Act Amendments, in which Congress expressly excluded certain classes of aliens from the bar of INA § 241(a)(5):

> In the same 2000 amendments that extended the application period for LIFE Act relief, Congress expressly excluded certain classes of aliens from the bar of [the reinstatement statute]. The amendments revised section 202 of the Nicaraguan Adjustment and Central American Relief Act and section 902(a) of the Haitian Refugee Immigration Fairness Act of 1998 to exempt aliens described in those acts who apply for adjustment of status from reinstatement pursuant to [the reinstatement statute]. In other words, when Congress intended to exempt certain groups of aliens from the sweep of the reinstatement statute, it knew how to do so.

*Padilla v. Ashcroft*, 334 F.3d 921, 925 (9th Cir. 2003). Congress would not have specified that adjustment of status and waiver of "'the grounds of inadmissibility

---

[6] The Legal Immigration Family Equity Act or "LIFE Act", Pub. L. No. 106-553, 114 Stat. 2762A-143 through 149 (2000) and the LIFE Act Amendments of 2000, Pub. L. No 106-554, 114 Stat. 2763A-324 through 328 (2000).

under subparagraphs (A) and (C) of [INA § 212(a)(9)]'" were available to previously removed aliens in these specific classes, and that "'the provisions of [INA § 241(a)(5) should] not apply'" to such aliens, if adjustment of status and waiver were available to *all* previously removed aliens. *See Berrum-Garcia*, 2004 WL 2668797 at *7 (quoting Pub. Law No. 106-554 App. D, § 1505, 114 Stat. 2763A-326). Since Fernandez does not fall within the exempted classes of aliens, his application is barred by INA § 241(a)(5).

C. No Impermissible Retroactive Effect of INA § 241(a)(5).

Consequently, we must turn to Fernandez' argument that INA § 241(a)(5)'s bar of his application for adjustment is an impermissible retroactive effect of the revised reinstatement statute. Although, until now, we have not addressed the temporal scope of INA § 241(a)(5), it is clear that "the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994); *see also Jurado-Gutierrez v. Greene*, 190 F.3d 1135, 1148 (10th Cir. 1999) ("The presumption against retroactivity remains the appropriate default rule.") (quotation omitted). While Congress has the power, within constitutional limits, to enact laws with retroactive effect, since there are inherent dangers in retroactive legislation, a statute may not be applied

retroactively unless Congress clearly intended such a result. *INS v. St. Cyr*, 533 U.S. 289, 316 (2001).

The reinstatement statute differed from the previous statute in at least three ways.

> First, under the old regime only illegal reentrants who had previously been deported on certain specified grounds (e.g., conviction for an aggravated felony) were subject to having their original deportation orders reinstated. Under section 241(a)(5), however, all illegal reentrants now face the prospect of such reinstatement. Second, under the earlier system an alien had a right to a hearing, presided over by an immigration judge, before reinstatement of the prior deportation order became a fait accompli. Under the regulations implementing section 241(a)(5), however, there is no longer a right to such a hearing (or to any hearing, for that matter). Third, preexisting law allowed an illegal reentrant to attempt to fend off execution of a reinstated deportation order by petitioning for discretionary relief in the form of an adjustment of his status to that of an alien lawfully admitted for permanent residence. Conversely, section 241(a)(5) pretermits an illegal reentrant's ability to apply for any relief under the INA.

*Lattab*, 384 F.3d at 12-13 (citations omitted).

A three-step test governs the determination of whether INA § 241(a)(5) may be applied to bar Fernandez' adjustment application.

> First, the court must determine whether Congress has expressly prescribed [INA § 241(a)(5)'s] proper reach . . . . Second, if Congress has not expressly addressed the question, we employ the normal rules of statutory construction to ascertain the statute's temporal scope . . . . Finally, if the court cannot ascertain congressional intent, we consider whether the statute has a retroactive effect . . . . If a retroactive effect exists, it triggers the

traditional judicial presumption against retroactivity and the new law will not be applied.

*Jurado-Gutierrez*, 190 F.3d at 1148 (quotations omitted). [7]

1. *Did Congress expressly prescribe INA § 241(a)(5)'s proper temporal reach?*

Here, INA § 241(a)(5) contains no explicit provision as to its proper temporal reach, and the normal rules of statutory construction must therefore be employed to attempt to ascertain congressional intent. *Velasquez-Gabriel v. Crocetti*, 263 F.3d 102, 106 (4th Cir. 2001) ("Although § 241(a)(5) does not explicitly state whether it applies retroactively or prospectively, the [parties] each contend that Congress unambiguously defined the statute's temporal application.").

2. *Can congressional intent regarding INA § 241(a)(5)'s proper temporal reach be determined by application of the rules of statutory construction?*

---

[7] In *Landgraf*, the Supreme Court set forth a two-step retroactivity test: first, a court must determine whether congressional intent regarding temporal scope is evident from the statute; second, if congressional intent is not evident, the court must proceed to determine whether the new statute would have a retroactive effect. *Landgraf*, 511 U.S. at 280. The three-step retroactivity test set forth in *Jurado-Gutierrez* is a result of the Supreme Court's clarification in *Lindh v. Murphy*, 521 U.S. 320, 326 (1997), that the normal rules of statutory construction apply to the determination that must be made under the first step of the *Landgraf* test.

-14-

A number of our sister circuits have considered whether application of the rules of statutory construction reveals an unambiguous congressional intent as to the INA § 241(a)(5)'s temporal scope, and have reached differing conclusions.

On one hand, the Ninth and Sixth Circuits, applying the normal rules of statutory construction, determined that Congress unambiguously intended for INA § 241(a)(5) to be applied only to previously deported aliens who re-entered the country after the effective date of the statute. *Castro-Cortez v. INS*, 239 F.3d 1037, 1050-53 (9th Cir. 2001) ("[Section 241(a)(5)] applies only to aliens who re-enter the United States after IIRIRA's effective date."); *Bejjani v. INS*, 271 F.3d 670, 676-77 (6th Cir. 2001) (same).

On the other hand, the First, Third, Fourth, Fifth, Eighth, and Eleventh Circuits ("majority circuits") have determined that application of the normal rules of statutory construction does not reveal unambiguous congressional intent as to the temporal scope of INA § 241(a)(5). *Sarmiento Cisneros v. United States Attorney Gen.*, 381 F.3d 1277, 1283 (11th Cir. 2004); *Arevalo*, 344 F.3d at 12-13; *Avila-Macias v. Ashcroft*, 328 F.3d 108, 114 (3d Cir. 2003); *Ojeda-Terrazas v. Ashcroft*, 290 F.3d 292, 299 (5th Cir. 2002); *Alvarez-Portillo*, 280 F.3d at 865; *Velasquez-Gabriel*, 263 F.3d at 108.

Fernandez cites to *Castro-Cortez* and *Bejjani* as support for his argument that INA § 241(a)(5) should not bar his application because his last illegal entry

-15-

into the United States occurred in 1981, well before the reinstatement statute's effective date. He does not, however, address the refutation of the holdings in those cases by the majority of the circuits.

In *Castro-Cortez*, the Ninth Circuit relied on three arguments in reaching its holding:

> First, the court noted that Congress eliminated the retroactivity language from the statute and stated that "Congress's decision to remove the retroactivity language from this part of the statute provides strong support for the conclusion that it did not intend that the revised provision be applied to reentries occurring before the date of the statute's enactment." Second, the court concluded, by negative implication, that, because Congress had specified in several other sections of the IIRIRA whether the section would apply retroactively, the failure to provide for retroactive application in [INA § 241(a)(5)] indicated that Congress did not intend for that section to apply retroactively. Third, the court stated that "Congress is deemed to enact legislation with *Landgraf*'s 'default rule' [against retroactivity] in mind. . . . Accordingly, silence provides useful evidence as to intent for the first step of *Landgraf*'s two-part inquiry.

*Sarmiento Cisneros*, 381 F.3d at 1282 (quotations omitted); *accord Castro-Cortez*, 239 F.3d at 1051-52. The Sixth Circuit relied on much the same arguments in reaching its holding in *Bejjani*, noting further that Congress did not simply remove the previous retroactivity language, it specifically rejected drafts of the new statute that included such language. *See Bejjani*, 271 F.3d at 684-87. But the Sixth Circuit also found the Ninth Circuit's negative implication argument to be unpersuasive. *Id.*

-16-

The majority circuits have disagreed with the reasoning of the Ninth and Sixth Circuits, generally finding that: (1) while Congress's elimination of the previous retroactivity language lends weight to the argument that Congress intended the statute to apply only prospectively, the silence that replaced that retroactivity language cannot be considered a clear statement of congressional intent; [8] (2) no negative implication may be drawn from the fact that some sections of IIRIRA require application to pre-enactment conduct, when other IIRIRA sections prohibit application to pre-enactment conduct, [9] and (3) although Congress is deemed to act with the *Landgraf* "default rule" in mind, an equally valid conclusion is that Congress remained silent in expectation that the courts would proceed to determine, on a case-by-case basis, whether the statute would have an impermissible retroactive effect. [10]

---

[8]     *Sarmiento Cisneros*, 381 F.3d at 1282; *Avila-Macias*, 328 F.3d at 113.

[9]     *Sarmiento Cisneros*, 381 F.3d at 1282 ("The sometimes retrospective, sometimes prospective provisions that surround the statute unveil the Janus-like faces of Congress, but leave its mind concealed." (quotation omitted)); *Arevalo*, 344 F.3d at 13 (considering the sometimes retrospective, sometimes prospective provisions, "the negative implication argument could just as easily run in the other direction"); *Avila-Macias*, 328 F.3d at 113; *Velasquez-Gabriel*, 263 F.3d at 107.

[10]    *Sarmiento Cisneros*, 381 F.3d at 1282-83; *Arevalo*, 344 F.3d at 12 ("Although Congress is presumed to be aware of the law's general aversion to retroactivity . . . it must also be presumed to know that some *Landgraf* inquiries come out the other way." (internal citation omitted)); *Avila-Macias*, 328 F.3d at 114.

The majority circuits' findings must be considered alongside the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289 (2001). In *St. Cyr*, the Supreme Court considered the retroactive effect of the replacement of former INA § 212(c) (giving the Attorney General broad discretion to waive deportation orders of resident aliens) with IIRIRA § 304(b) (removing aliens convicted of aggravated felonies from the class of aliens eligible for waiver). *St. Cyr*, 533 U.S. at 297. The government argued that application of the rules of statutory construction revealed Congress's unambiguous intent that IIRIRA § 304(b) was to apply to all removals following the statute's effective date. *Id*. at 315. Specifically, the government argued that: (1) IIRIRA was so comprehensive a statute that Congress must have intended that "the provisions of the old law should no longer be applied at all"; (2) that the effective date of the statute is, in and of itself, an indicator that Congress intended the statute to be applied retroactively; and (3) that the "saving provision" in IIRIRA § 309(c)(1)–which states the amendments were not to apply to proceedings that began before the effective date–implies that the amendments were to apply to *all* proceedings commenced after the effective date. *Id*. at 317-18 (quotation omitted).

The Supreme Court, after noting that "[c]ases where this Court has found truly 'retroactive' effect adequately authorized by statute have involved statutory language that was so clear that it could sustain only one interpretation[,]" *id*. at

316-17, went on to hold that none of the arguments set forth by the government were sufficient reason to find unambiguous congressional intent regarding the section's temporal scope, especially when Congress unambiguously indicated its intent as to temporal scope in *other* sections of IIRIRA. *Id*. at 317-20; *see also Ojeda-Terrazas*, 290 F.3d at 299-300 ("Congress' clear statement in other IIRIRA provisions that those provisions applied retroactively, the effective date of the statute, and the inclusion of the saving provision did not make Congress' statement sufficiently clear to satisfy *Landgraf's* first step.").

In light of the Supreme Court's holding in *St. Cyr*, we agree with the reasoning of the majority circuits and join them in holding that Congress's failure to expressly state that the reinstatement statute *applied* to aliens who re-entered the country prior to its effective date, does not mean Congress therefore unambiguously intended for the statute *not* to apply to these aliens. Consequently, we must determine whether INA § 241(a)(5)'s bar of Fernandez' adjustment application is an impermissible retroactive effect of that statute.

3. *Would the application of INA § 241(a)(5) have an impermissible retroactive effect in this case?*

"The inquiry into whether a statute operates retroactively demands a commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment." *Sarmiento*

-19-

*Cisneros* , 381 F.3d at 1282 (quotation omitted). "A provision has a retroactive effect if it, for example, 'would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'" *Jurado-Gutierrez* , 190 F.3d at 1148 (quoting *Landgraf* , 511 U.S. at 280). In this case, the enactment of INA § 241(a)(5) did not attach new legal consequences to events previously completed.

We recognize that a number of cases have held that barring an application for adjustment under INA § 241(a)(5) is an impermissible retroactive effect where the adjustment application was filed before the effective date of IIRIRA. *See Sarmiento Cisneros* , 381 F.3d at 1284; *Arevalo* , 344 F.3d at 14 ("[A]pplications for discretionary relief, once made, often become a source of expectation and even reliance."). [11] In this case, since Fernandez' marriage and the filing of his

_____

[11]     Further, in *Alvarez-Portillo* , the Eighth Circuit held INA § 241(a)(5)'s bar had an impermissible retroactive effect when applied to an alien who had both re-entered the United States and married a United States citizen prior to April 1, 1997, notwithstanding the fact that his adjustment application was not filed until 2001. *Alvarez-Portillo* , 280 F.3d at 861. The Eighth Circuit held that, at the time Alvarez-Portillo was *married,* "long-standing INS practice created a reasonable expectation that he could defend against later deportation or removal by seeking a discretionary adjustment of status to lawful permanent resident[,]" and the elimination of this defense, without more, was an attachment of a new legal consequence to events completed before the enactment of IIRIRA. *Id*. at 867; *see also Lopez-Flores v. Dep't of Homeland Sec.* , 387 F.3d 773, 775-76 (8th Cir. 2004) (holding reinstatement had impermissible retroactive effect when alien had re-entered U.S. *and* employer had filed an application for work authorization *before* effective date of IIRIRA). Without expressing an opinion as to the

(continued...)

adjustment application did not occur until 2001, the only event completed before April 1, 1997, was his illegal re-entry into the United States. In other words, on the day the reinstatement statute came into effect, Fernandez had no protectable expectation of being able to adjust his status. It would be a step too far to hold that simply by re-entering the country, Fernandez created a settled expectation that *if* he did marry a U.S. citizen, he *might then* be able to adjust his status and defend against removal. "Inchoate plans to act in the future, even when made in anticipation of the legal consequences of those future actions, do not convey the type of settled expectation that retroactivity analysis seeks to protect." *Lattab*, 384 F.3d at 16 (holding that a plan to marry a United States' citizen and then apply for adjustment of status was not a settled expectation). As with the alien in *Lattab*: "[w]hile section 241(a)(5) barred [Fernandez] from applying for any affirmative relief (such as an adjustment of status) from and after April 1, 1997, that change was inconsequential because there was no relief for which [he] could then have qualified." *Id*. at 15.

---

[11](...continued)
correctness of the decision reached in *Alvarez-Portillo*, we note Fernandez' marriage did not occur until 2001.

## III. CONCLUSION

Because we find (1) that INA § 241(a)(5) bars an application for adjustment of status under INA § 245(i), and (2) that such a bar is not an impermissible retroactive effect of INA § 241(a)(5) when applied to Fernandez, the petition for review is DENIED.