# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1430

_____

| | | |
|---|---|---|
| Alfonso Alvarez-Portillo, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of an |
| v. | * | Order of the Immigration |
| | * | and Naturalization Service. |
| John Ashcroft, et al., | * | |
| | * | |
| Respondents. | * | |
| | * | |

_____

Submitted: September 10, 2001

Filed: February 13, 2002

_____

Before LOKEN and FAGG, Circuit Judges, and BOGUE,* District Judge.

_____

LOKEN, Circuit Judge.

Alfonso Alvarez-Portillo appeals the decision of the Immigration and Naturalization Service (INS) reinstating his prior order of deportation and ordering his removal under § 241(a)(5) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1231(a)(5), enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009-546

_____

*The HONORABLE ANDREW W. BOGUE, United States District Judge for the District of South Dakota.

(1996).[1]  Section 241(a)(5) was enacted to expedite the removal of aliens who illegally reenter this country after being deported.  The issue before us is whether § 241(a)(5) may be applied to aliens such as Alvarez-Portillo who illegally reentered before the statute's enactment.  Applying the retroactivity analysis of Landgraf v. USI Film Products, 511 U.S. 244 (1994), we conclude that new procedures may be applied to expedite all reinstatement proceedings commenced after the enactment of § 241(a)(5), but the substantive defenses to removal eliminated by § 241(a)(5) may not be retroactively denied to aliens who illegally reentered prior to enactment.  Accordingly, we vacate the removal order and remand for further proceedings.

## I.  Background.

Alvarez-Portillo, a citizen of Mexico, illegally entered the United States in November of 1993.  After a full deportation hearing, he was deported to Mexico on December 8, 1993.  Twelve days later, he illegally reentered the United States.  He avoided INS detection for more than seven years, living and working under an assumed name and marrying a United States citizen in November 1996.  In February 2001, Alvarez-Portillo and his wife visited an INS district office to apply for an adjustment of his status to permanent resident alien.  Discovering his prior deportation order, the INS took Alvarez-Portillo into custody, commenced this proceeding under § 241(a)(5), reinstated the 1993 deportation order, and ordered his immediate deportation to Mexico.  Alvarez-Portillo appeals this final agency action, arguing that the INS improperly applied § 241(a)(5) retroactively because his illegal reentry occurred before the statute's enactment.  Alternatively, he argues that the

---

[1]Immigration law can be confusing to the outsider because experts usually refer to the statutes by their INA and IIRIRA section numbers, while most of us have access only to the codified version of those statutes.  With some reluctance, our opinion will yield to this reality by referring to the statutes at issue by their INA and IIRIRA section numbers, with an initial cross-reference to their very different section numbers in Title 8 of the United States Code.

agency's procedures for implementing § 241(a)(5) violate his right to procedural due process. Finally, Alvarez-Portillo argues that INA § 245(i), 8 U.S.C. § 1255(i), conflicts with and supersedes § 241(a)(5); we reject this argument without discussion as it is without merit.

## II.  IIRIRA Changes to Reinstatement and Removal.

To place the Landgraf retroactivity analysis in proper perspective, it is essential to define the precise impact of the new statute. In December 1993, when Alvarez-Portillo illegally reentered the country, and up until the effective date of IIRIRA, the INA provided that, if a deported alien should illegally reenter, "the previous order of deportation shall be deemed to be reinstated from its original date and such alien shall be deported under such previous order at any time subsequent to such reentry." INA § 242(f), 8 U.S.C. § 1252(f) (1994). In practice, however, this strong language was tempered by the statute's limited scope. Section 242(f) applied only to aliens who were initially deported for enumerated reasons (such as criminal offenses). It did not apply to aliens such as Alvarez-Portillo who were deported for entering the country without inspection; aliens in this category who illegally reentered were entitled to a new deportation proceeding before again being deported.

In 1994, INA § 245 was amended to make aliens who were physically present and had an immigrant visa immediately available eligible for a discretionary adjustment of status to lawful permanent resident. See Pub. L. No. 103-317, Tit. V, § 506(b), (c), 108 Stat. 1765, 1766, codified at 8 U.S.C. § 1255(i) (1994). By administrative practice, aliens in deportation proceedings were allowed to avoid removal by seeking and obtaining an adjustment of status to lawful permanent resident. See 8 C.F.R. § 242.17 (1995). Thus, after Alvarez-Portillo married a United States citizen in 1996, if the INS had commenced a deportation proceeding under this prior statutory regime for illegal reentry, his marriage would have made him a likely candidate for adjustment of status to lawful permanent resident, though such relief

-3-

was within the discretion of the Attorney General.  See Matter of Garcia, 16 I&N Dec. 653 (BIA 1978).

Congress took dramatic steps to change this legal landscape in IIRIRA, replacing the little-used § 242(f) with new § 241(a)(5), a broader and far less forgiving reinstatement-of-removal provision:

> **(5) Reinstatement of removal orders against aliens illegally reentering.** If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

Congress's intent is readily apparent from IIRIRA's legislative history:

> Existing procedures to deny entry to and to remove illegal aliens from the United States are cumbersome and duplicative.  Removal of aliens who enter the United States illegally, even those who are ordered deported after a full due process hearing, is an all-too-rare event.

H.R. Rep. 104-469(I), 1996 WL 168955 at *107;

> Aliens who violate U.S. immigration law should be removed from this country as soon as possible.  Exceptions should be provided only in extraordinary cases specified in the statute and approved by the Attorney General. . . .  The opportunity that U.S. immigration law extends to aliens to enter and remain in this country is a privilege, not an entitlement.

S. Rep. 104-249, 1996 WL 180026 at *7. To implement this new statute, the INS adopted a summary administrative reinstatement-of-removal procedure in which "[t]he alien has no right to a hearing before an immigration judge," an immigration officer determines whether the alien is subject to reinstatement of a prior deportation order, and the alien is entitled only to written notice and an opportunity to "make a written or oral statement contesting the determination." 8 C.F.R. § 241.8(a), (b).

Unlike the prior reinstatement provision, § 241(a)(5) applies to all previously deported aliens, including Alvarez-Portillo, whose prior deportation was for entry without inspection. Moreover, in a § 241(a)(5) proceeding, the alien may neither attack the validity of the prior deportation order nor avoid removal by obtaining discretionary relief such as an adjustment of status to lawful permanent resident. In this case, an immigration officer acting pursuant to 8 C.F.R. § 241.8 determined that Alvarez-Portillo was deported for entering the United States without inspection in November 1993 and unlawfully reentered in December 1993. If he was subject to reinstatement and removal in accordance with the new statute, the INS removal order must be affirmed.

## III.  The Landgraf Analysis.

In Landgraf, the Supreme Court confirmed that, while Congress may make civil legislation retroactive in most cases, the judicial presumption against retroactivity may be overcome only by a clear expression of congressional intent. However, the Court also recognized that "application of new statutes passed after the events in suit is unquestionably proper in many situations," even if the statute is silent as to its temporal reach. 511 U.S. at 273. The resulting doctrinal tension led the Court to articulate a two-part test for determining whether a subsequently-enacted federal statute may govern the events at issue:

> [T]he court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of

course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

511 U.S. at 280. The question here is whether the INS decision summarily reinstating Alvarez-Portillo's prior deportation order and ordering his immediate removal under § 241(a)(5) passes muster under either part of this two-part test. As is often the case, these are difficult inquiries.

**A. Part One.** The issue under part one of the <u>Landgraf</u> analysis is whether we need not invoke the judicial presumption because the statute answers the retroactivity issue by prescribing that § 241(a)(5) either does or does not apply to aliens who illegally reentered prior to its enactment. Though § 241(a)(5) is silent as to its temporal reach, the INS argues that inferences may be drawn from other IIRIRA provisions, such as § 309, the general effective date section, to find the "unambiguous directive" that <u>Landgraf</u> requires for express retroactivity. 511 U.S. at 263. In our view, the Supreme Court rejected this contention in its recent decision in <u>INS v. St. Cyr</u>, 121 S. Ct. 2271 (2001). <u>St. Cyr</u> dealt with § 304(b) of IIRIRA, which repealed former 8 U.S.C. § 1182(c). The Court concluded that Congress had not made § 304(b) expressly retroactive to aliens such as St. Cyr:

> The presumption against retroactive application of ambiguous statutory provisions, buttressed by the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien, forecloses the conclusion that, in enacting § 304(b), Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits.

-6-

121 S. Ct. at 2290 (citations and quotations omitted). We conclude this reasoning applies equally to § 241(a)(5).

After rejecting the INS's argument for express retroactivity, the Supreme Court in St. Cyr moved directly to part two of the Landgraf analysis. However, Alvarez-Portillo argues that, despite Congress's silence as to the temporal reach of § 241(a)(5), normal principles of statutory interpretation reveal a clear intent that the statute *not* apply to aliens who illegally reentered prior to IIRIRA's effective date. Three circuits have now considered this contention, reaching different conclusions. Panels of the Ninth and Sixth Circuits agree with Alvarez-Portillo, relying on the fact that the prior reinstatement provision, § 242(f), expressly stated that it applied to aliens whose deportation orders were entered before its effective date, Congress deleted this express retroactivity declaration in § 241(a)(5), and Congress included express retroactivity provisions in other sections of IIRIRA whereas § 241(a)(5) is silent as to its temporal reach. See Castro-Cortez v. INS, 239 F.3d 1037, 1050-52 (9th Cir. 2001); Bejjani v. INS, 271 F.3d 670, 684-87(6th Cir. 2001).

In our view, this analysis is faulty because it assumes Congress intended to expressly resolve the question of retroactivity one way or the other. We think it more likely that Congress decided to allow the presumption of non-retroactivity -- the "judicial default rule" as the Supreme Court described it in Landgraf and Lindh v. Murphy, 521 U.S. 320, 325 (1997) -- to resolve the issue. Congress knew that § 241(a)(5) both extended the reinstatement procedure to additional classes of illegal reentrants and made significant substantive and procedural changes to the reinstatement procedure. Congress also knew that the presumption only applies when a new statute has a "retroactive effect" -- the issue in the second part of the Landgraf analysis -- and that changes in procedural rules are usually but not always applied retroactively, that is, to proceedings pending on the date of enactment. See Martin v. Hadix, 527 U.S. 343, 358-59 (1999); Landgraf, 511 U.S. at 275 & n.29. In these

-7-

circumstances, we agree with the Fourth Circuit that Congress by its silence has not "unambiguously indicated either that § 241(a)(5) applies to all aliens or that it applies only to aliens that reentered the country after the statute's effective date." <u>Velasquez-Gabriel v. Crocetti</u>, 263 F.3d 102, 108 (4th Cir. 2001). Therefore, we must proceed to the second part of the <u>Landgraf</u> analysis, as the Supreme Court did in both <u>Martin</u>, 527 U.S. at 356-57, and <u>St. Cyr</u>, 121 S. Ct. at 2290.[2]

**B. Part Two.** The second part of the <u>Landgraf</u> test asks whether applying a new statute to prior conduct "would have retroactive effect." 511 U.S. at 280. This inquiry is essential because, "[e]ven absent specific legislative authorization, application of new statutes passed after the events in suit is unquestionably proper in many situations." <u>Id.</u> at 273. The determination of whether the presumption against retroactivity should be invoked

> demands a commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment. A statute has retroactive effect when it takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past.

<u>St. Cyr</u>, 121 S. Ct. at 2290-91 (quotations omitted).

Because § 241(a)(5) altered the prior reinstatement procedure in many ways, an initial question is whether *any* retroactive effect would make the *entire* statute inapplicable to aliens in Alvarez-Portillo's position. We think not. In <u>Landgraf</u>, the

---

[2]Though the Supreme Court in <u>St. Cyr</u> did not discuss this issue, it affirmed a Second Circuit opinion that expressly rejected the contention that "the absence of specific retrospective language . . . requires the court to infer by negative implication that Congress clearly intended IIRIRA § 304 to apply prospectively." <u>St. Cyr v. INS</u>, 229 F.3d 406, 416 n.5 (2d Cir. 2000).

Court interpreted the instruction in the Civil Rights Act of 1991 that its provisions were to take effect upon enactment "to mean that courts should evaluate <u>each provision</u> of the Act in light of ordinary judicial principles concerning the application of new rules to pending cases and preenactment conduct." 511 U.S. at 280 (emphasis added). Section 309(a) of IIRIRA contains the same instruction. The principle that each statutory change should be separately analyzed for retroactive effect is particularly important for statutes, such as § 241(a)(5), that include both procedural and substantive changes to prior law. Accordingly, we will examine each change to determine whether its application to Alvarez-Portillo would result in an impermissible retroactive effect under part two of the <u>Landgraf</u> analysis.

1. Section 241(a)(5) extended the reinstatement procedure to Alvarez-Portillo and other illegal reentrants whose initial deportation order was based upon entry without inspection. Whether a removal proceeding commenced after IIRIRA's effective date results in a new deportation order, or the reinstatement of the prior order, is a change that is entirely procedural and prospective. No illegally reentering alien has a reasonable expectation that his prior deportation order will not be reinstated for purposes of effecting a second removal. Thus, INS properly sought Alvarez-Portillo's removal by means of a § 241(a)(5) reinstatement proceeding.

2. Section 241(a)(5) provides that, in a reinstatement proceeding, "the prior order of removal . . . is not subject to being reopened or reviewed." Again, this change is entirely procedural and prospective. Illegally reentering aliens have no reasonable expectation that they will be entitled to collaterally attack their prior, final deportation orders in a subsequent removal proceeding.

3. The INS has construed § 241(a)(5) as mandating a more streamlined reinstatement procedure. Therefore, its implementing regulation provides the alien with notice and an opportunity to be heard but authorizes an immigration officer to make the required fact findings and enter a reinstatement order in summary fashion.

8 C.F.R. § 241.8. This is clearly a permissible interpretation of the statute that is entitled to substantial judicial deference. See Escudero-Corona v. INS, 244 F.3d 608, 612 (8th Cir. 2001). Once again, it is a prospective change in the applicable removal procedures. In IIRIRA, Congress intended to reduce the delays incident to removing aliens who have illegally reentered. Illegal reentrants have no entitlement to such delays and no reasonable expectation that prior inefficiencies in the administration of our immigration laws would continue indefinitely. Thus, there is no impermissible retroactive effect when INS conducts reinstatement proceedings commenced after IIRIRA's enactment using the procedures adopted to implement § 241(a)(5), even if the substantive issue is whether preenactment conduct warrants an alien's removal.

4. That brings us to the most critical issue raised by this appeal, whether the provision in § 241(a)(5) that an alien subject to reinstatement "may not apply for any relief under this chapter" results in an impermissible retroactive effect when applied to an illegal reentrant such as Alvarez-Portillo, who illegally reentered prior to IIRIRA's enactment. The INS argues that reinstatement of removal cannot have a retroactive effect because Alvarez-Portillo had no vested right to remain in the United States, § 241(a)(5) did not impose a new legal duty or attach new legal consequences to his prior illegal reentry, and his removal or deportation is prospective in nature. These arguments have some force. See Castro-Cortez, 239 F.3d at 1053-54 (Fernandez, J. dissenting). But we conclude they are contrary to the decision in Hughes Aircraft Co. v. United States ex rel. Schumer, 520 U.S. 939 (1997).

Hughes Aircraft involved a qui tam action brought under the False Claims Act against a government subcontractor accused of filing false claims in connection with Air Force contracts. All the relevant conduct occurred at a time when the False Claims Act barred qui tam suits based on information already in the government's possession. Before the lawsuit was brought, however, the Act was amended to disallow defenses premised on the government's possession of the information. See 31 U.S.C. § 3730(e)(4)(A). The qui tam relator in Hughes Aircraft argued that this

amendment should apply because it imposed no new duties with respect to transactions already completed, created no new cause of action, and did not increase the defendant's potential liability for making a false claim. Applying Landgraf, the Supreme Court rejected this contention, concluding that the statute eliminating this disclosure defense would have an impermissible retroactive effect if applied in a case where the alleged false claims and the disclosures to the government occurred before enactment. See 520 U.S. at 951-52.

The retroactive effect issue in this case is virtually identical to the issue decided in Hughes Aircraft. Alvarez-Portillo, who was deported and illegally reentered in late 1993, married a United States citizen in 1996, prior to the effective date of § 241(a)(5). At that time, long-standing INS practice created a reasonable expectation that he could defend against later deportation or removal by seeking a discretionary adjustment of status to lawful permanent resident. The presumption against retroactivity of civil statutes is based in part on principles reflected in the Ex Post Facto Clause, Article I, § 10, cl. 1, of the Constitution. Landgraf, 511 U.S. at 266. A core ex post facto principle is that a new statute may not deprive a criminal defendant of a defense available at the time his alleged crime was committed. See Collins v. Youngblood, 497 U.S. 37, 52 (1990). Hughes Aircraft confirmed that this principle is fully applicable in defining impermissible retroactive effects in civil cases under part two of the Landgraf analysis. And St. Cyr established that a retroactive effect is impermissible even if its only impact is on relief that was discretionary under prior immigration law. "There is a clear difference," the Court explained, "between facing possible deportation and facing certain deportation." 121 S. Ct. at 2293, citing Hughes Aircraft.

In Velasquez-Gabriel v. Crocetti, 263 F.3d 102, 108-110 (4th Cir. 2001), the Fourth Circuit concluded that § 241(a)(5) had no impermissible retroactive effect because the illegal reentrant could have applied for adjustment of status before IIRIRA's enactment, and therefore § 241(a)(5) did not attach new legal consequences

to events completed before its enactment. We disagree. <u>Hughes Aircraft</u> held that the elimination of a substantive defense, without more, "attaches new legal consequences" to events completed prior to enactment that would give rise to liability under the new statute. That is precisely the effect of changing the law to provide that an illegal reentrant in a reinstatement proceeding under § 241(a)(5) "may not apply for any relief under this chapter." Under prior law, Alvarez-Portillo had a reasonable expectation he could either file for a discretionary adjustment of status, or wait and seek the adjustment as a defense to a later deportation proceeding. He chose to wait, and § 241(a)(5) as applied by the INS has now deprived him of that defense. To this extent, we conclude the statute had an impermissible retroactive effect on his reinstatement and removal proceeding.

### IV. Conclusion and Procedures on Remand.

In addition to arguing for non-retroactivity, Alvarez-Portillo urges us to conclude that the INS procedures for implementing § 241(a)(5) deprived him of procedural due process. Given our decision that further proceedings are necessary to remedy an impermissible retroactive effect, we decline to reach this issue.

"Due process is flexible and calls for such procedural protections as the particular situation demands." <u>Matthews v. Eldridge</u>, 424 U.S. 319, 334 (1976) (quotation omitted). The streamlined notice and opportunity to be heard afforded illegal reentrants under 8 C.F.R. § 241.8 seem quite appropriate when the only issues to be determined are those establishing the agency's right to proceed under § 241(a)(5) -- the alien's identity, the existence of a prior removal order, and whether the alien has unlawfully reentered. <u>Accord</u> <u>Alvarenga-Villalobos v. Ashcroft</u>, 271 F.3d 1169, 1173-74 (9th Cir. 2001); <u>see</u> <u>The Japanese Immigrant Case</u>, 189 U.S. 86, 101-02 (1903). On the other hand, we have now concluded that limiting the issues in this fashion resulted in an impermissible retroactive effect when applied to Alvarez-Portillo. Expanding the relevant inquiry on remand may well require

-12-

adjusting the process that is due. That question is best addressed in the first instance by the affected agency. As the Supreme Court said in rather similar circumstances in <u>Landon v. Plasencia</u>, 459 U.S. 21, 34-35 (1982):

> The role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy. . . . Congress did not intend to require the use of deportation procedures in cases such as this one. Thus, it would be improper simply to impose deportation procedures here because the reviewing court may find them preferable.

For the foregoing reasons, we grant Alvarez-Portillo's petition for review, vacate the INS removal-through-reinstatement order dated February 12, 2001, and remand to the INS for further proceedings not inconsistent with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.