F I L E D
United States Court of Appeals
Tenth Circuit

NOV 5 2004

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

GREGORY PHILBERT TREVOR
TYSON,

     Petitioner - Appellant,

v.

GARLAND JEFFERS, Warden, Cibola
County Correctional Center, and
UNITED STATES OF AMERICA,

     Respondents - Appellees.

No. 02-2153
(D.C. No. CIV-01-661 MV/DJS)
(Dist. New Mexico)

ORDER AND JUDGMENT[*]

Before **EBEL**, Circuit Judge, **BRORBY** , Senior Circuit Judge, and **BRISCOE** , Circuit Judge.

Petitioner Gregory Philbert Trevor Tyson was ordered removed from the United States in 1992 after having been convicted of a drug offense in state court. He then illegally reentered this country, and was apprehended in 1997. The following year, Tyson pled guilty to the charge of illegally reentering the United States, and in 1999 he was again removed from this country under the streamlined

---

[*]This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

proceedings for reinstatement of prior removal orders established under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). Tyson sought a writ of habeas corpus in the district court for the District of New Mexico, but the district court rejected his petition.

Tyson now appeals, renewing his challenges to his 1992 removal order and his 1998 conviction, and asking us to decide whether the government's use of the streamlined reinstatement process for illegally reentering aliens violates due process.

We agree with the district court that Tyson's 1998 guilty plea forecloses any review of his 1992 removal order, and that Tyson's attempt collaterally to challenge his 1998 conviction under 28 U.S.C. § 2241 was improper. We therefore AFFIRM the district court's ruling on those points. With regard to Tyson's challenge to his 1999 reinstatement order, we agree with the government that Tyson's failure to exhaust his avenues for direct appellate review of his reinstatement order deprives the federal courts of habeas corpus jurisdiction over that issue. The district court's habeas jurisdiction in immigration cases is conditioned on the petitioner having exhausted all other available avenues for judicial review, which he did not do. Tyson has not shown sufficient cause and prejudice for us to excuse his error because his retroactivity challenge to IIRIRA's streamlined reinstatement rules is without merit since his guilty plea

- 2 -

was entered well after IIRIRA went into effect. Accordingly, we find that the district court lacked jurisdiction over his § 2241 petition, and we AFFIRM the district court's dismissal of that claim as well.

## I.    Background

Petitioner Tyson, a citizen of Trinidad and Tobago, was admitted to the United States as a permanent resident in 1979. In 1984, Tyson was convicted in New York state of attempted criminal sale of marijuana. Two years later the Immigration and Naturalization Service ("INS") commenced deportation proceedings against him as an alien convicted of a controlled substance crime, and his order of removal became final in 1992. After Tyson was deported in 1992, he illegally reentered the United States one year later.

In 1997, Tyson was apprehended and charged with illegal reentry in violation of 8 U.S.C. §§ 1326(a)(1), (a)(2), and 1326(b)(2). Tyson pleaded guilty, and was sentenced in November of 1998 to 57 months imprisonment. On June 12, 1999, the INS issued a notice of intent to reinstate Tyson's 1992 order of removal, and the reinstatement decision was finalized on June 22, 1999.

Tyson filed a petition for a writ of habeas corpus in the district court for the District of New Mexico on June 12, 2001, asserting jurisdiction under 28 U.S.C. § 2241. In that petition Tyson challenged the validity of his 1998

conviction for illegal reentry, attacked his 1992 removal order as improper, and challenged the INS's reinstatement of his 1992 removal order on the grounds that the streamlined reinstatement procedure violated his due process rights. A magistrate judge issued a recommendation that Tyson's petition be dismissed, which the district court accepted in an order dated May 31, 2002.

Proceeding *pro se*, Tyson appeals the district court's dismissal of his petition, raising the same arguments presented below. In a prior order, this court appointed counsel to represent him, and requested supplemental briefing from counsel on the jurisdictional questions presented in this case.

## II.  Discussion

There are no relevant facts being contested by the parties in this case, and we review the district court's legal conclusions supporting its dismissal of Tyson's habeas petition *de novo*.

### A.  Tyson's 1998 Conviction

We agree with the district court that Tyson's challenge to his 1998 conviction could not be brought in a § 2241 habeas action, since Congress has established 28 U.S.C. § 2255 as the exclusive habeas remedy for challenges to federal convictions and sentencing decisions. In his *pro se* opening brief, Tyson

insists that he is challenging the "execution" of his sentence and claims that he already filed a § 2255 petition in New York and that it was rejected both by the district court and by the Second Circuit. Tyson did take a direct appeal of his sentence to the Second Circuit, see United States v. Tyson, 201 F.3d 433, 1999 WL 1295969 (2d Cir. Dec. 27, 1999) (unpublished) (dismissing Tyson's direct appeal because he had waived his appeal rights in his plea agreement), but there is no record before us of any § 2255 petition.

A brief look at Tyson's arguments, however, confirms that he does in fact seek to attack his conviction in this proceeding. Tyson argues that his guilty plea was involuntary and that the indictment was flawed, and he now asks us to vacate his conviction on these grounds. This is a challenge that must be brought under § 2255 in the sentencing court (here, the Eastern District of New York), not under § 2241 in the district in which the petitioner finds himself confined (here, the District of New Mexico). Tyson has now forfeited such a § 2255 challenge in any event, since the one-year statute of limitations on § 2255 petitions has run.[1] Hence, we affirm the district court's dismissal of this claim.

---

[1]In addition, if Tyson really has filed a previous § 2255 petition in the Eastern District of New York, he would face further obstacles if we were to construe his present petition as one under § 2255 because his present petition may be a successive petition.

B.    *Tyson's 1992 Removal Order*

Tyson's 1998 guilty plea, in turn, forecloses his challenge to his 1992 deportation order. A lawful prior removal order, as well as unauthorized reentry into the United States, are necessary elements for a conviction on illegal reentry. See 8 U.S.C. § 1326(a). "A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." United State v. Broce, 488 U.S. 563, 569 (1989). Thus, unless Tyson can upset his 1998 conviction, he cannot in turn attack the legitimacy of his 1992 deportation order. As we point out above, the district court correctly found that Tyson could not challenge his illegal reentry conviction in this § 2241 action, and we consequently hold that the district court was also correct in dismissing his attack on the 1992 deportation order.

C.    *Tyson's 1999 Reinstatement Order*

The government argues that the district court lacked jurisdiction over Tyson's challenge to his 1999 reinstatement order because Tyson failed to exhaust his avenues for direct appeal from that order. We agree.

Judicial review of the INS's final removal decisions is governed by 8 U.S.C. § 1252 and provides for direct appeals to the circuit courts as the

exclusive avenue for reviewing agency decisions.[2]  Although the text of

§ 1252(a)(1) speaks of judicial review for "orders of removal," we have

previously held that this provision also gives us jurisdiction to hear direct appeals

from reinstatement orders entered pursuant to § 1231(a)(5).  Duran-Hernandez v.

Ashcroft, 348 F.3d 1158, 1162 n.3 (10th Cir. 2003).

Two recent cases from this court have pointed out that petitioners err when

they file habeas petitions in district court without first filing for direct appellate

review of removal orders in the courts of appeals.  In Duran-Hernandez, we stated

that a petitioner erred in seeking habeas review in district court on claims that

should have been pursued first on direct appeal, noting that the petitioner had

both filed the wrong kind of action and sought relief from the wrong court.  Id. at

1162.  We nevertheless held that the petitioner's venue error could be cured by

---

[2]"Judicial review of a final order of removal ... is governed only by chapter 158 of Title 28, except as provided in subsection (b) of this section...."  8 U.S.C. § 1252(a)(1).  Subsection (b) establishes a 30-day time limit for filing direct appeals and regulates the subject matter and scope of our direct appellate review.

means of the transfer statute, 28 U.S.C. § 1631,[3] and we accepted the filing as a direct appeal where it was filed within the time constraints of a direct appeal. Id.

We most recently discussed the existence of a procedural bar against a § 2241 habeas petition raising immigration issues that could have been, but were not, raised on direct appellate review in Latu v. Ashcroft, 375 F.3d 1012 (10th Cir. 2004). Although we ultimately excused the petitioner's failure to file a direct appeal and approved the district court's exercise of its habeas jurisdiction because the petitioner was in fact barred from direct appeal under 8 U.S.C. § 1252(a)(2)(C) (barring judicial review of removal orders entered against aliens convicted of certain crimes), we observed that "[g]enerally, a habeas petition cannot be used to substitute for direct appeal[,]" citing our previous opinion in United States v. Warner, 23 F.3d 287 (10th Cir. 1994), for the proposition that "habeas proceedings 'are not available to test the legality of matters which should

_____

[3]28 U.S.C. § 1631 provides:

Whenever a civil action is filed in a [lower federal] court ... or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

- 8 -

have been raised on direct appeal.'" Latu, 375 F.3d at 1017 (quoting Warner, 23 F.3d at 291).

The clearest statement to date of this exhaustion principle as it relates to immigration orders can be found in Castro-Cortez v. INS, where the Ninth Circuit ruled that the petitioner's failure to take advantage of his ability to seek direct review under § 1252 ran afoul of the courts' exhaustion requirement, thus depriving the district court of jurisdiction to hear a habeas petition challenging the reinstatement of a final removal order. 239 F.3d 1037, 1046-47 (9th Cir. 2001). "[T]he exhaustion requirement in § 2241 cases is subject to waiver because it is not a 'jurisdictional' prerequisite.... [Nevertheless, p]rudential limits, like jurisdictional limits and limits on venue, are ordinarily not optional. The district court was not authorized to hear these petitions under § 2241, because direct review was available." Id. at 1047. This requirement that § 2241 habeas claims must first be advanced, if possible, on direct appeal has also been endorsed by the First and Seventh Circuits. See Arevalo v. Ashcroft, 344 F.3d 1, 16 (1st Cir. 2003) (citing Castro-Cortez for the proposition that "federal courts should exercise habeas jurisdiction only when all other judicial and administrative avenues have been exhausted."); Gomez-Chavez v. Perryman, 308 F.3d 796, 799-800 (7th Cir. 2002) (approving of both the district court's dismissal, for lack of jurisdiction, of a habeas petition raising unexhausted challenges to a

reinstatement decision and of the district court's instruction to the petitioner that he must seek direct review of the reinstatement order in the court of appeals).

Our conclusion in Riley v. INS, 310 F.3d 1253, 1256 (10th Cir. 2002), that the district courts continue to have some habeas jurisdiction in situations involving a final order of removal is fully consistent with the requirement that aliens seeking habeas review first exhaust the direct appellate remedies provided by Congress. Eliminating that exhaustion requirement, on the other hand, would drastically undermine Congress's purpose in passing that law to expedite the removal of those aliens found by the INS to be removable.

This exhaustion requirement, and the procedural default rule accompanying it, are motivated by the same general principles that support the procedural default rule applied to § 2255 petitions. Just as the need for finality and for conservation of judicial resources leads us to conclude that a § 2255 habeas petition may not ordinarily be used to provide a criminal defendant a second bite at the apple for something that could have been raised on direct appeal, so also a similar concern for scarce judicial resources and respect for Congress's clear intent, in enacting IIRIRA, to streamline removal proceedings directs us to conclude that litigants should not be permitted to circumvent the available direct appeal remedy (and its tight filing deadlines) by simply filing a habeas petition under § 2241 in the district court.

The House Report explains the purpose behind IIRIRA's reforms of illegal alien removal procedures as follows:

> Existing procedures to deny entry to and to remove illegal aliens from the United States are cumbersome and duplicative.  Removal of aliens who enter the United States illegally, even those who are ordered deported after a full due process hearing, is an all-too-rare event....
>
> H.R. 2202 streamlines rules and procedures for removing illegal aliens, and establishes special procedures for removing alien terrorists. Aliens who arrive in the United States with no valid documents will be removed on an expedited basis; arriving aliens with credible asylum claims will be allowed to pursue those claims. For illegal aliens already present in the U.S., there will be a single form of removal proceeding, with a streamlined appeal and removal process.

H.R. REP. No. 104-469(I), at 107-108 (1996).  See also S. REP. No. 104-249, at 7, 14 (1996) (discussing congressional purpose of "[s]treamlining judicial review of orders of exclusion or deportation").

Congress has established a 30-day window following the agency's removal decision during which an alien may appeal that order to the courts of appeals.  8 U.S.C. § 1252(b)(1).  Were we to suspend our prudential requirement that habeas corpus is available only after other avenues of review have been exhausted, we would eviscerate Congress's efforts to streamline the removal process.  Purely legal due process challenges would be exempt from any statutory time limits, since they could be advanced in a habeas petition filed at any time prior to actual removal or release from custody, and the 30-day deadline set out in § 1252(b)

- 11 -

would only constrain an alien's ability to bring fact-based challenges that would not be cognizable in habeas. Such tinkering at the margins of removal procedures was not what Congress had in mind when it passed IIRIRA.

If a petitioner is eligible for direct appeal, failure to exhaust that avenue by filing for appeal within the 30-day window provided by § 1252(b) forecloses habeas review for all claims that could have been raised and addressed on such an appeal. This exhaustion requirement is not in the text of § 2241; it is a prudential requirement imposed by the courts, and may therefore be waived. Courts are thus permitted to overlook failures to exhaust and address the merits of a § 2241 claim, and the government may waive a defense based on the procedural default that results from such a failure to exhaust available channels for appellate review. As in the § 2255 context, "[t]he procedural default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." Massaro v. United States, 538 U.S. 500, 504 (2003) (discussing the judicially created exhaustion requirement for § 2255 petitions).

The procedural bar resulting from a failure to take a direct appeal under § 1252 is issue specific and it is, moreover, curable in the event that a petitioner shows cause and prejudice for his error. Thus, an alien subject to a removal order may petition for habeas relief in the district court on any claim that could not

have been heard by the court of appeals in a § 1252 appeal.  See Gallo-Alvarez v. Ashcroft, 266 F.3d 1123, 1130 (9th Cir. 2001) (permitting the district court to "consider any issues not cognizable on petition for review to this court that [the alien] raised in his habeas petition.")  See also 8 U.S.C. § 1252(a)(2) (prohibiting direct judicial review for certain types of decisions and for aliens convicted of certain crimes).  Any claim which could have been, but was not, raised on a direct appeal may nevertheless be brought in a § 2241 petition only if the alien can show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains.

Tyson argues, in his *pro se* opening brief, that the immigration officer's failure to notify him of his direct appeal rights violated due process.  Even assuming Tyson has such a right of notification, which is not at all obvious, Tyson fails to establish prejudice because there is no reasonable likelihood that his retroactivity challenge to the application of the streamlining provision of 8 U.S.C. § 1231 to him would have been successful on appeal.  See United States v. Aguirre-Tello, 353 F.3d 1199, 1209 (10th Cir. 2004) (*en banc*).

The amendments to section 241 of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231, provide a streamlined procedure for removing aliens who illegally reenter the United States after having previously been removed or deported by reinstating the previous order of removal:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5).

The regulations implementing this statute provide an alien subject to reinstatement with no right to a hearing before an immigration judge. The reinstatement proceeding is a summary process conducted by an immigration officer, who determines: (1) whether the alien has been subject to a prior order of removal; (2) whether the alien before the officer is in fact the same person as the one previously ordered removed; and (3) whether the alien in question unlawfully reentered the United States. 8 C.F.R. § 241.8(a). If all three elements are met, the alien is given notice of the officer's determination and an opportunity to make a written or oral statement contesting that determination, but the officer is required only to "consider whether the alien's statement warrants reconsideration of the determination." Id. § 241.8(b).

Tyson argues that his illegal reentry into the United States in 1993 predated IIRIRA's entry into force on April 1, 1997 and that the government's use of § 1231(a)(5)'s revised procedures denies him due process by retroactively foreclosing avenues of relief to which he was entitled under prior law.

- 14 -

We apply a three-part test in determining whether a statute may be applied retroactively:

First, the court must determine whether Congress has expressly prescribed the statute's proper reach. Second, if Congress has not expressly addressed the question, we employ the normal rules of statutory construction to ascertain the statute's temporal scope. Finally, if the court cannot ascertain congressional intent, we consider whether the statute has a retroactive effect. If a retroactive effect exists, it triggers the traditional judicial presumption against retroactivity and the new law will not be applied.

A provision has a retroactive effect if it, for example, would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. However, a statute does not operate retrospectively merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment. The Supreme Court has emphasized that this is a functional test.

Jurado-Gutierrez v. Greene, 190 F.3d 1135, 1148-49 (10th Cir. 1999) (citations omitted).

In INS v. St. Cyr, 533 U.S. 289 (2001), the Supreme Court considered a retroactivity claim involving a provision of IIRIRA revoking the possibility of discretionary relief from deportation for immigrants convicted of an aggravated felony. After finding that congressional intent as to retroactive application was unclear, the Court held that the new provision would have an impermissible retroactive effect if applied to an alien who pled guilty to such an aggravated felony prior to the enactment of IIRIRA. Id. at 321-26.

- 15 -

Since St. Cyr was decided, the Third, Fourth, Fifth, and Eighth Circuits have similarly found congressional intent regarding retroactive application of § 1231(a)(5)'s streamlined reinstatement procedures to be unclear, before analyzing the functional effects of applying the new restrictions and concluding they would not have impermissibly retroactive effects. See Avila-Macias v. Ashcroft, 328 F.3d 108 (3d Cir. 2003); Velasquez-Gabriel v. Crocetti, 263 F.3d 102 (4th Cir. 2001); Ojeda-Terrazas v. Ashcroft, 290 F.3d 292 (5th Cir. 2002); Alvarez-Portillo v. Ashcroft, 280 F.3d 858 (8th Cir. 2002). The Sixth and Ninth Circuits, however, have interpreted § 1231(a)(5) to find that Congress intended that provision to apply only prospectively to aliens that illegally reenter the United States after IIRIRA entered into force on April 1, 1997. See Castro-Cortez, 239 F.3d at 1051-53 (decided before St. Cyr and concluding that Congress had expressly prescribed that § 1231(a)(5) was only to be applied to aliens illegally reentering after IIRIRA's entry into force); Bejjani v. INS., 271 F.3d 670, 687 (6th Cir. 2001).

We do not need to resolve the nuances of the various retroactivity arguments in this case, however, because Tyson could not in any event present a successful retroactive effect challenge to any aspect of § 1231(a)(5), since he pled guilty to the criminal charge of illegal reentry in 1998, after IIRIRA's amendments to the reinstatement process were in force.

- 16 -

By pleading guilty, Tyson effectively admitted that he was subject to a lawful prior removal order and that he reentered the United States illegally. Thus all the elements necessary for finding him eligible for reinstatement and expedited removal were conceded by Tyson in his guilty plea. Cf. Broce, 488 U.S. at 569 ("A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence."). This concession, moreover, was made in November of 1998, well after the new provisions of IIRIRA had gone into force. Tyson cannot now feign surprise when § 1231(a)(5)'s streamlined reinstatement procedures are applied to him, and we therefore reject his retroactivity claim.

Tyson did not take a direct appeal from the INS's decision in 1999 to reinstate his prior removal order. He does not raise in this habeas action any arguments that could not have been presented on such an appeal; he does not establish cause and prejudice; and his habeas petition is therefore now procedurally barred. We therefore conclude that the district court lacked jurisdiction over Tyson's habeas petition and AFFIRM the dismissal of his appeal insofar as it attacks his 1999 reinstatement order.

## III.   Conclusion

For the reasons stated above, we AFFIRM the district court order dismissing Tyson's petition.[4]

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge

---

[4]We grant Tyson's two outstanding motions, one to amend his reply brief with a transcript and the other to judicially notice a Second Circuit ruling on his 1992 appeal.

No. 02-2153, Tyson v. Jeffers

**BRISCOE,** Circuit Judge, concurring:

While I agree with the outcome here, I differ in the analysis of Tyson's challenge to his 1999 reinstatement order.

Tyson contends the notice to reinstate the 1992 deportation order was invalid because it constituted an impermissibly retroactive application of a 1996 amendment to the INA (brought about by enactment of the IIRIRA), § 245(a)(1), to an act that occurred in 1993, i.e., his illegal reentry into the United States. The majority concludes the district court lacked habeas jurisdiction to review Tyson's claim because he failed to exhaust his avenues for direct appeal of that order. I would not conclude that failure to exhaust is a bar here, but would conclude instead that the district court had jurisdiction pursuant to 28 U.S.C. § 2241 to entertain that portion of Tyson's petition that sought to challenge the INS' notice of intent to reinstate the prior deportation order, but only to the extent that Tyson sought to challenge the INS' legal determinations. On the merits of that challenge, however, Tyson fails.

Tyson argues that, under INS v. St. Cyr, 533 U.S. 289 (2001), and Riley v. INS, 310 F.3d 1253 (10th Cir. 2002), habeas jurisdiction remains available to him because he raises questions of law and he would otherwise have no available judicial forum for raising those questions. In St. Cyr, the Supreme Court held that "habeas jurisdiction under § 2241 was not repealed by AEDPA and IIRIRA

[both of which made significant changes to the INA]," and thus a criminal alien could use § 2241 to collaterally challenge a final order of removal. 533 U.S. at 314. In <u>Riley</u>, this court, agreeing with the Second and Third Circuits, concluded that federal courts also retain § 2241 habeas jurisdiction over petitions from non-criminal aliens. 310 F.3d at 1255-56.

The government argues that "<u>St. Cyr</u> does not control" because "Tyson could have sought review directly in this Court." Aplee. Br. at 26.[1] While it is true Tyson could have sought direct "judicial review" in this court of the INS' decision to reinstate, the availability of such a proceeding does not mean that Tyson was deprived of the opportunity to seek federal habeas review of that same decision. Indeed, <u>St. Cyr</u> expressly rejected this very argument. Tyson's failure to seek direct "judicial review" in this court is not, however, without consequence. Direct "judicial review" in this court would have allowed Tyson to raise a larger range of issues than are available to him in a habeas corpus

---

[1] The government offers other arguments as to why habeas jurisdiction is unavailable to Tyson, but virtually all of those arguments have been foreclosed by <u>St. Cyr</u>. For example, the government argues 8 U.S.C. § 1252(b)(9), which indicates there is "no judicial review in deportation cases unless this section provides judicial review," strengthens its argument that § 1252(a)(1) is the exclusive procedure by which Tyson can seek federal court review of the notice to reinstate the prior deportation order. In <u>St. Cyr</u>, however, the Supreme Court stated "that § 1252(b)(9) does not clearly apply to actions brought pursuant to the general habeas statute, and thus cannot repeal that statute either in part or in whole." 533 U.S. at 314.

proceeding. In contrast, habeas jurisdiction is generally limited to reviewing the INS' "legal determinations," and its underlying "factual determinations" are generally unreviewable. St. Cyr, 533 U.S. at 306. Therefore, the district court had jurisdiction pursuant to § 2241 to address Tyson's legal challenges of the INS' notice of intent to reinstate the prior deportation order.

Tyson contends the notice to reinstate the 1992 deportation order was invalid because it constituted an impermissibly retroactive application of a 1996 amendment to the INA (brought about by enactment of the IIRIRA), § 245(a)(1), to an act that occurred in 1993, i.e., his illegal reentry into the United States. In support of this contention, Tyson argued in his pro se appellate brief that retroactive application of INA § 245(a)(1) deprived him of various procedural rights that existed at the time he illegally reentered the United States. In particular, Tyson alleged he was denied the right to a hearing before an immigration judge, a right to appeal to the Board of Immigration Appeals, a right to develop a record or place any information in the administrative record, and a right to assistance of counsel. In the supplemental appellate brief, Tyson's appointed counsel asserts, for the first time, that the notice of reinstatement (because of application of the amended provisions of the INA to Tyson) denied Tyson "at least three substantive defenses to removal that could have been asserted in a reinstatement of deportation order proceeding under former section

- 3 -

242(f): 1) discretionary relief under former section 212(c); 2) discretionary relief under section 212(h); and 3) collateral challenges to the 1992 deportation order." Aplt. Supp. Br. at 24.

The key question is whether the new procedures implemented by § 241(a)(5) can permissibly be applied to Tyson, even though he reentered the United States prior to enactment of § 241(a)(5). The answer to this question requires application of Landgraf v. USI Film Products, 511 U.S. 244 (1994). In Landgraf, the Supreme Court set forth a two-step test for determining whether a federal statute applies retroactively to conduct occurring before its enactment. Under the first step, a court must "determine whether Congress has expressly prescribed the statute's proper reach." Id. at 280. In doing so, a court may look to the express language of the statute, but may also use traditional tools of statutory construction. See Lindh v. Murphy, 521 U.S. 320, 325-26 (1997). If it is determined that Congress clearly expressed its intent as to the statute's retroactivity, the inquiry ends. Landgraf, 511 U.S. at 280. If the court is unable to discern Congress' intent, however, the court must proceed to the second step, which requires it to determine whether application of the statute to past conduct "would have retroactive effect." Id. A statute has an impermissible retroactive effect when "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to

- 4 -

transactions already completed." Id. If the court determines the statute would have an impermissible retroactive effect if applied to past conduct, the statute must be applied prospectively only. Id.

I have found at least seven circuits that have addressed the very question raised by Tyson, i.e., whether INA § 241(a)(5) can be applied retroactively to illegal reentries that occurred prior to its effective date. Although all have applied the Landgraf analysis, the outcomes are split. The Sixth and Ninth Circuits have concluded that INA § 241(a)(5) cannot be applied retroactively to such illegal reentries, i.e., the INS cannot file a notice of intent to reinstate an order of deportation if the illegal reentry occurred prior to the effective date of § 241(a)(5). See Bejjani v. INS, 271 F.3d 670, 677-78 (6th Cir. 2001); Castro-Cortez v. INS, 239 F.3d 1037, 1040 (9th Cir. 2001). In contrast, the First, Fourth, Fifth, Eighth, and Eleventh Circuits have concluded that INA § 241(a)(5) can be applied retroactively to illegal reentries occurring before its effective date. See Sarmiento Cisneros v. United States Attorney Gen., 381 F.3d 1277, 1284-85 (11th Cir. 2004); Arevalo v. Ashcroft, 344 F.3d 1, 13-14 (1st Cir. 2003); Ojeda-Terrazas v. Ashcroft, 290 F.3d 292, 299-300 (5th Cir. 2002); Alvarez-Portillo v. Ashcroft, 280 F.3d 858, 864 (8th Cir. 2002); Velasquez-Gabriel v. Crocetti, 263 F.3d 102, 103 (4th Cir. 2001). However, the Eighth Circuit has also held that § 241(a)(5) cannot be applied in a manner that would eliminate a substantive

defense otherwise available to an alien who illegally reentered before the statute's effective date. Alvarez-Portillo, 280 F.3d at 867. Further, the First and Eleventh Circuits have held that § 241(a)(5) cannot be applied to an illegal reentrant who requested discretionary relief before § 241(a)(5) took effect. Sarmiento Cisneros, 381 F.3d at 1284; Arevalo, 344 F.3d at 4. Together, these cases outline, in exhaustive detail, the arguments for and against retroactive application of § 241(a)(5) under the Landgraf framework. With respect to the first step of the Landgraf analysis, none of these courts have concluded that Congress clearly intended that § 241(a)(5) be applied retroactively. Instead, they have either concluded that (1) Congress clearly intended that § 241(a)(5) would not be applied retroactively, or (2) that Congress' intent was unclear. Although it is perhaps a close question, I would side with the latter conclusion, i.e., there is no sufficiently clear expression of congressional intent regarding the retroactivity of § 241(a)(5).

The courts that have reached and decided the second step of the Landgraf analysis have generally agreed that the basic procedural aspects of § 241(a)(5) do not have an impermissible "retroactive effect." Most notably, in Alvarez-Portillo, the Eighth Circuit concluded that § 241(a)(5)'s denial of a hearing before an immigration judge did not have a retroactive effect because "[i]llegal reentrants have no entitlement to such delays and no reasonable expectation that prior

- 6 -

inefficiencies in the administration of our immigration laws would continue indefinitely." 280 F.3d at 866. Likewise, the Eighth Circuit concluded that "[w]hether a removal proceeding commenced after IIRIRA's effective date results in a new deportation order, or the reinstatement of the prior order, is a change that is entirely procedural and prospective" because "[n]o illegally reentering alien has a reasonable expectation that his prior deportation order will not be reinstated for purposes of effecting a second removal." Id. at 865. Lastly, the Eighth Circuit concluded that § 241(a)(5)'s prohibition on reopening or reviewing a prior order of removal was "entirely procedural and prospective" because "[i]llegally reentering aliens have no reasonable expectation that they will be entitled to collaterally attack their prior, final deportation orders in a subsequent removal proceeding." Id. at 866.

That leaves only the question of whether § 241(a)(5) can be applied to eliminate substantive defenses that an illegally reentering alien had prior to the effective date of § 241(a)(5). Section 241(a)(5) provides, in pertinent part, that an alien subject to reinstatement "may not apply for any relief under this chapter." Here, it is uncontroverted that Tyson made no attempt, following his illegal reentry in 1993, to seek discretionary relief from the INS (thus distinguishing this case from Arevalo). Nevertheless, Tyson argues § 241(a)(5) had an impermissible retroactive effect when applied to him because (1) it deprived him of various

procedural rights otherwise available under the prior law; and (2) it denied "at least three substantive defenses to removal that could have been asserted in a reinstatement of deportation order proceeding under former section 242(f)." Aplt. Supp. Br. at 24.

In light of the decisions of the First, Fourth, Fifth, Eighth, and Eleventh Circuits, there appears to be no merit to Tyson's arguments regarding deprivation of procedural rights. His argument that he was deprived of substantive defenses requires a closer examination of each defense he allegedly could have asserted. Although Tyson argues he was deprived of the opportunity to collaterally challenge the 1992 deportation order, that precise argument was rejected in Alvarez-Portillo, 280 F.3d at 866 ("Illegally reentering aliens have no reasonable expectation that they will be entitled to collaterally attack their prior, final deportation orders in a subsequent removal proceeding."). That leaves Tyson's assertion that he could have sought and obtained discretionary relief under former sections 212(c) (permitting the Attorney General to waive deportation for excludable aliens) and 212(h) (permitting the Attorney General to waive deportation for certain aliens otherwise excludable on the basis of criminal conviction). With respect to his § 212(c) argument, it is important to note that Tyson previously sought and was denied relief under § 212(c) during his 1992 deportation proceedings. In light of that fact, he has failed to convincingly

- 8 -

explain why he would have had a reasonable expectation of obtaining discretionary relief under that same section at the time he illegally reentered the United States in 1993.  As for his argument that he could have sought and obtained relief under former § 212(h), the record indicates that Tyson had at least five controlled substance convictions on his record, two of which involved the sale or attempted sale of controlled substances.  Conviction of a drug offense rendered an alien statutorily ineligible for relief under former § 212(h) unless it was "a single offense of simple possession of 30 grams or less of marijuana."  8 U.S.C. § 1182(h).  Tyson was clearly ineligible for discretionary relief under former § 212(h).